# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10458

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2017

Lyle W. Cayce
Clerk

JAMES C. WETHERBE, PH.D.,

      Plaintiff - Appellant

v.

TEXAS TECH UNIVERSITY SYSTEM; LANCE NAIL, PH.D., in his individual capacity only; DR. PAUL GOEBEL, in his official capacity only,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:15-CV-119

ON PETITION FOR REHEARING

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

PER CURIAM:*

      IT IS ORDERED that the petition for panel rehearing is GRANTED and the opinion previously filed in this case, *Wetherbe v. Texas Tech Univ. Sys.*, No. 16-10458, --- F. App'x ----, 2017 WL 2390593, is WITHDRAWN. The following opinion is substituted therefor:

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10458

James Wetherbe is a university professor suing his employer, Texas Tech University, and the current and former deans of the business school where he teaches. Wetherbe claims that the University and the deans have violated the First Amendment by retaliating against him for publicly criticizing tenure in the academy. The district court granted Defendants' motion to dismiss, holding that tenure is not a matter of public concern and that Wetherbe's speech on the subject was thus not protected by the First Amendment. We REVERSE the district court's dismissal in part because Wetherbe's public comments on tenure were those of private citizen on a matter of public concern and AFFIRM in part because Wetherbe concedes that some of the claims and issues presented in his complaint are barred by res judicata, collateral estoppel, and sovereign immunity.

**I**

In 2012, James Wetherbe filed a First Amendment suit against Bob Smith, Texas Tech University's (TTU) provost, and Lawrence Schovanec, TTU's president (collectively, the Previous Defendants), alleging that he suffered adverse employment actions due to his views on tenure. Wetherbe, a business professor at TTU's Rawls College of Business who has been an "outspoken critic of tenure at universities for over 20 years," and who had previously refused to accept tenure at TTU, alleged that the Previous Defendants violated the First Amendment by refusing to consider him for the deanship of Rawls or for a Horn Professorship, a prestigious position at TTU, because he did not have tenure, because he held anti-tenure views, because of his public speeches and consulting work, and because he was critical of tenure in his interviews for those positions. The district court denied the Previous Defendants' motion to dismiss, but this court reversed and rendered judgment in their favor, holding that the First Amendment did not protect Wetherbe's

2

decision to reject tenure or his personal views on tenure, that Wetherbe failed to allege that the defendants were aware of his public speech, and that comments made in the course of an employment interview were not those of a private citizen on a matter of public concern. *See Wetherbe v. Smith*, 593 F. App'x 323, 327–29 (5th Cir. 2014).

In 2015, Wetherbe filed this suit against Dr. Lance Nail ("Dean Nail"), the former Dean of the Rawls College of Business, and against TTU (collectively with the new Dean of the Rawls College of Business, Paul Goebel, "Defendants"), claiming that a number of new adverse employment events were motivated by his first lawsuit and by his anti-tenure publications. The district court granted Defendants' motion to dismiss for failure to state a claim. Specifically, the court found that Wetherbe's speech did not involve a matter of public concern because "[t]enure is a benefit that owes its existence to, and is generally found only in the context of, government employment." The court also found that Wetherbe had failed to state a claim for relief based on his theory that Defendants retaliated against him for filing his first lawsuit, and granted Defendants' motion to dismiss in full.

Wetherbe timely appealed. On appeal, he challenges only the portion of the opinion dismissing his public-speech-retaliation claim, abandoning his lawsuit-retaliation claim.

## II

"This court reviews a district court's grant of a motion to dismiss de novo." *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). The plaintiff's well-pleaded facts are to be accepted as true and viewed in the light most favorable to him. *Id.* A claim is properly dismissed when the facts alleged do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility

No. 16-10458

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 450 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III

We first address the district court's basis for dismissal, then turn to the Defendants' proposed alternative bases for affirmance.

## A

Defendants argue that the district court correctly held that tenure is not a matter of public concern. In *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), the Supreme Court held that the First Amendment protects the rights of public employees "as citizens to comment on matters of public interest in connection with the operation of" their workplaces. However, in order to establish a First Amendment claim based on such speech, a public employee must first "establish that his speech involves a matter of public concern." *United States Dep't of Justice v. Fed. Labor Relations Auth.*, 955 F.2d 998, 1005–06 (5th Cir. 1992) (citing *Coughlin v. Lee*, 946 F.2d 1152, 1154 (5th Cir. 1991)). "Whether speech addresses a matter of public concern is to be 'determined by the content, form, and context of a given statement.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). We therefore examine Wetherbe's speech with respect to three overlapping features: content, context, and form.[1]

---

[1] We note that the district court's basis for dismissal, that "[t]enure is a benefit that owes its existence to, and is generally found only in the context of, government employment," is clearly in conflict with longstanding precedent holding that the relevant inquiry is not whether an issue relates to government employment, but whether it involves a matter of public concern. *See, e.g., Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014) ("Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment."); *Perry v.*

No. 16-10458

The speech at issue consists of articles published in various media outlets, some of which were authored by Wetherbe and are critical of tenure, and some of which were authored by others and discuss Wetherbe's previous lawsuit and views on tenure. Many of these articles, which are attached to Wetherbe's complaint, discuss what Wetherbe perceives as the systemic problems with tenure, rather than Wetherbe's personal experience with tenure. For example, in an editorial in the Financial Times, Wetherbe opined that tenure is bad for schools, pointing to the high costs to universities and arguing that tenure "restricts the ability to rapidly shift research and faculty investments from static subjects to emerging and more critical domains." In an article in the Harvard Business Review, Wetherbe recommended, based on anecdotal and empirical evidence, that it would be better for schools and for students if teachers were contract employees. The articles discussing Wetherbe's own refusal of tenure are similarly geared toward tenure in general, reasoning from Wetherbe's personal experience that tenure is not necessary and has outlived its usefulness. Because these articles focus on the systemic impact of tenure, not Wetherbe's own job conditions, the content of the speech indicates that the speech involves a matter of public concern. *See Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 190 (5th Cir. 2005) (finding that the content of an employee's speech weighed "in favor of holding that she spoke on a matter of public concern" when she spoke about a matter unrelated to her own employment status or job performance). Wetherbe's personal stake in and

---

*Sindermann*, 408 U.S. 593, 595, 598 (1972) (holding that where a state college professor claimed First Amendment retaliation based on his disagreement with the policies of the board of regents, the district court erred in granting summary judgment without analyzing whether he had been terminated for "public criticism of his superiors on matters of public concern"). Furthermore, the district court's premise is fundamentally flawed, as tenure is a feature of both private and public universities. *See, e.g.*, *Klinge v. Ithaca Coll.*, 634 N.Y.S.2d 1000, 1002 (N.Y. Sup. Ct. 1995) (construing tenure policy of private university).

experience with tenure do not necessarily render his thoughts less important to the public. *See Moore v. Kilgore*, 877 F.2d 364, 370–72 (5th Cir. 1989) (firefighter's thoughts about staffing shortage constituted speech on a matter of public concern); *cf. Lane*, 134 S. Ct. at 2379 ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."). In fact, Wetherbe's position as a professor who has rejected tenure could make his thoughts on tenure of greater interest to the public given his unique experience and vantage point. *See Salge*, 411 F.3d at 188 (finding that high school secretary's speech was of "greater importance" to community members because of her "familiarity with the issues faced by the school district").

The context and form of Wetherbe's speech also indicate that the speech constituted a matter of public concern. Media coverage noted in Wetherbe's complaint, as well as the fact that various media outlets published Wetherbe's articles, shows that Wetherbe's speech was made against the backdrop of an ongoing public conversation about tenure, which indicates that the public is actually concerned about tenure. *See Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 373 (5th Cir. 2000) ("[S]peech made against the backdrop of ongoing commentary and debate in the press involves the public concern."). While Defendants argue that Wetherbe's speech was made "in the course of performing his job," there is no reason to infer from the complaint that writing articles on tenure or speaking to the press are part of Wetherbe's job duties. *See Hurst v. Lee Cty.*, 764 F.3d 480, 484 (5th Cir. 2014) (noting that inquiry into public employees' First Amendment claim concerns whether statements were made pursuant to their "official duties"). Further, Wetherbe's complaint alleges that the media approached him for comment about tenure, a fact this court has previously found weighs in favor of finding that speech

No. 16-10458

constituted a matter of public concern. *See Salge*, 411 F.3d at 189; *Moore*, 877 F.2d at 371. In light of these factors, we find that Wetherbe's complaint has plausibly alleged that his speech in the form of articles published on tenure constituted speech on a matter of public concern.

**B**

Defendants contend that even if Wetherbe's speech is protected, Wetherbe has not plausibly alleged that the adverse employment actions detailed in his complaint were motivated by his publications. Defendants did not raise this argument below.[2] "Issues raised for the first time on appeal 'are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice.'" *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (quoting *United States v. Garcia-Pillado*, 898 F.2d 36, 39 (5th Cir. 1990)). We conclude that no manifest injustice would result from finding that Defendants have failed to preserve this argument and, accordingly, do not reach its merits.

**C**

Defendants urge three alternative bases for affirmance: (1) collateral estoppel (as similar issues were previously litigated); (2) res judicata (as Wetherbe has brought claims related to his previous lawsuit that antedate the filing of that suit); and (3) sovereign immunity (as TTU is an arm of the state of Texas). Wetherbe has conceded that each of these arguments is at least partially meritorious.

---

[2] At oral argument, Defendants claimed that they raised this argument below by stating in the conclusion section of their motion to dismiss, "Wetherbe's allegations affirmatively establish that the only speech of which Defendants were aware was not protected and he therefore cannot state a claim for free speech retaliation." This is insufficient to preserve the issue for our review, especially because Defiants argued below that *none* of Wetherbe's speech was protected by the First Amendment.

No. 16-10458

A party who has had issues of fact or law adjudicated adversely to it in a previous action may be collaterally estopped from relitigating the same issues in a subsequent action. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–29 (1979). Defendants argue, and Wetherbe does not contest, that Wetherbe is collaterally estopped from asserting claims that he was retaliated against for his personal anti-tenure views and for rejecting tenure, as those claims were previously adjudicated. *See Wetherbe,* 593 F. App'x at 328–29. However, Wetherbe correctly argues that the issue of retaliation on the basis of his articles, as distinguished from his views on tenure, has not been adjudicated. *See id.* at 328 (holding that Wetherbe had not alleged that defendants in the previous action were aware of any of his public speech). "[C]ollateral estoppel applies only to issues of fact or law necessarily decided by a prior court." *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 345 (5th Cir. 1982). Accordingly, we find that collateral estoppel does not bar consideration of alleged retaliation for authoring anti-tenure articles.

The related doctrine of res judicata bars claims if: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). Unlike collateral estoppel, res judicata "bars all claims that were *or could have been advanced* in support of the cause of action on the occasion of its former adjudication, not merely those that were adjudicated." *Nilsen v. Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Wetherbe has failed to raise, and thereby waived, any arguments in opposition to the application of res judicata to claims predicated on events that occurred before the commencement of the previous action on

No. 16-10458

June 17, 2013. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). Thus, we affirm the district court's dismissal of claims based on the following events: (1) denial of access to the Mercer Scholarship Fund, which Wetherbe alleges occurred in January 2013; (2) removal from the associate dean position, the Chief Executive Roundtable, and the Leadership Council, which Wetherbe alleges occurred in May 2013; and (3) removal from teaching the MBA course, which Wetherbe alleges occurred on June 4, 2013.[3]

Finally, Defendants argue that Wetherbe's claims against TTU are barred by Eleventh Amendment sovereign immunity. While states are immune from suit in federal court absent waiver or abrogation of this immunity, under the *Ex Parte Young* doctrine, a party can seek prospective injunctive relief against a state officer acting in his official capacity based on an alleged ongoing violation of the Constitution. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013). The district court found that claims against TTU and against Nail, then dean of Rawls, in his official capacity were barred by the Eleventh Amendment, except to the extent that Wetherbe is seeking prospective injunctive relief. On appeal, Defendants argue that sovereign immunity bars *all* claims against TTU. Wetherbe does not discuss sovereign immunity in his opening brief, Wetherbe raised no responsive arguments in his reply brief, and conceded at oral argument that TTU is entitled to sovereign immunity. Thus, we affirm the district court's dismissal of all claims against TTU and of all claims against Goebel, the new dean, in his official capacity that do not seek prospective injunctive relief.

---

[3] The complaint says that this occurred both on June 4, 2013 and in July 2013. However, Wetherbe does not dispute Defendants' reliance on the June 4 date.

No. 16-10458

**\*\*\***

For these reasons, we AFFIRM the district court's dismissal of all claims against TTU; claims against Goebel that do not seek prospective injunctive relief; claims based on events that occurred before June 17, 2013; and claims based on Wetherbe's rejection of tenure and personal views on tenure, as distinguished from his expressed speech.  We REVERSE in all other respects and REMAND for further proceedings regarding Wetherbe's remaining claims against Nail in his individual capacity and claims against Goebel seeking prospective injunctive relief.