# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2025

Lyle W. Cayce
Clerk

No. 19-11325

———————————

James C. Wetherbe, PhD,

*Plaintiff—Appellee*,

*versus*

Texas Tech University System; Lance Nail, PhD, *in his individual capacity only*; Margaret Williams, *current Dean of Rawls College of Business at Texas Tech University, in her official capacity*,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:15-CV-119

———————————————————————

Before Dennis, Richman, and Haynes, *Circuit Judges*.

Priscilla Richman, *Circuit Judge*:

This is an interlocutory appeal from the district court's denial of qualified immunity. Professor James Wetherbe has long espoused anti-tenure views and rejected tenure at several universities. In this lawsuit, Wetherbe claims he was retaliated against for his anti-tenure views by the then-dean of the business school at Texas Tech University, Lance Nail. According to Wetherbe, once Nail became dean, he retaliated against him for

No. 19-11325

(1) authoring several op-eds that criticized tenure and (2) op-eds written by reporters that discussed Nail's previous lawsuit against the university.

Wetherbe sued Nail under 42 U.S.C. § 1983, alleging his First Amendment rights had been violated. He also sought injunctive and declaratory relief against Margaret Williams, the current dean of the business school. The district court denied the defendants' second amended Rule 12(c) motion, holding that Wetherbe sufficiently alleged a constitutional violation and that Nail's actions were objectively unreasonable in light of clearly established law. We conclude that the contours of First Amendment law regarding retaliation were not clearly established at the time the events at issue occurred. We therefore reverse and render judgment in favor of the defendants on Wetherbe's First Amendment retaliation claim.

## I

In providing the factual background relevant to this case, we accept the allegations in Wetherbe's complaint as true. He is a business professor who has taught, published, consulted, and presented extensively in his field over the past several decades. Throughout his career, he has been known for his anti-tenure views as he believes tenure is harmful because it is "an obstacle to change" and is "more about job security than academic freedom." Wetherbe's actions mirror his beliefs; he resigned tenure at the University of Houston and the University of Minnesota and declined tenure at the University of Memphis and at Texas Tech University (TTU).

In 2000, Wetherbe joined TTU as the Robert G. Stevenson Chair in Information Technology. In the offer letter, TTU stated that it understood Wetherbe "reject[s] tenure." The appointment was initially for three years but was renewable. Wetherbe held this position until 2014 when Nail refused to extend it.

2

No. 19-11325

Wetherbe served in many capacities at TTU. He routinely taught an MBA communications course and advised MBA students. In addition, he was part of the Dean's Advisory Council and served as the Associate Dean for Outreach.

In 2011, Wetherbe became a candidate for dean of TTU's Rawls College of Business. He alleges that although the search committee listed him as one of the top four candidates, the Provost declined to interview him because of his views on tenure. The position went to Nail, who was not one of the original four candidates selected for an interview.

Wetherbe sued the Provost under 42 U.S.C. § 1983 for allegedly retaliating against him for his anti-tenure speech during the search for a new dean. In an interlocutory appeal, this court held that Wetherbe failed to state a claim.[1]

Not long after TTU selected Nail to serve as Dean over Wetherbe, friction between the two ensued. Wetherbe contends part of this tension related to his anti-tenure speech. From December 2012 to July 2013, Wetherbe wrote several articles that critiqued tenure generally, and reporters discussed his lawsuit against TTU in other articles. Wetherbe's present complaint alleges that in August 2013, Nail allegedly removed Wetherbe from teaching the MBA communications course, falsely accused him of sexual harassment, and replaced him as faculty advisor for the MBA student association. Wetherbe published another article criticizing tenure, and Nail revoked Wetherbe's emeritus status for the Dean's Advisory Council in September 2013. In November 2013, a reporter published another piece addressing the debate over tenure and Wetherbe's lawsuit specifically. Over approximately the following year and a half, Nail allegedly made false

_____

[1] *Wetherbe v. Smith* (*Wetherbe I*), 593 F. App'x 323, 324 (5th Cir. 2014).

financial misconduct claims against Wetherbe, directed him to discontinue using a grant from Best Buy to fund one of his projects, refused to renew his Stevenson Chair position, declined to reimburse one of his trips, and informed him that he would be treated as a Professor of Practice for workload purposes, which increased his teaching load by fifty percent. Wetherbe claims that his removal from the MBA program triggered a twenty percent reduction in his annual compensation, the denied use of the Best Buy grant adversely affected his income by $50,000, and the loss of the Stevenson Chair position cost him $90,000 in funding per year.

As of the filing of Wetherbe's third amended complaint in 2019, Wetherbe continued to publish about tenure, and reporters continued to discuss his views on tenure and lawsuits against TTU. Nail was replaced as dean in December 2015. Since then, Interim Dean Paul Goebel and Dean Margaret Williams have not "engaged in new retaliation."

Wetherbe sued Nail, TTU, and the new dean of the Rawls College of Business for First Amendment retaliation based on his anti-tenure publications and his prior lawsuit. The district court granted the defendants' motion to dismiss for failure to state a claim, holding among other things, that Wetherbe's speech did not involve a matter of public concern.[2] On appeal, Wetherbe abandoned his retaliation claim based on his prior lawsuits.[3] He challenged only the district court's dismissal of his claim pertaining to the

---

[2] *Wetherbe v. Tex. Tech Univ. Sys.*, No. 5:15-CV-119-Y, 2016 WL 1273471, at *7 (N.D. Tex. Mar. 31, 2016), *aff'd in part, rev'd in part and remanded*, 699 F. App'x 297 (5th Cir. 2017) (per curiam).

[3] *Wetherbe v. Tex. Tech Univ. Sys.* (*Wetherbe II*), 699 F. App'x 297, 299 (5th Cir. 2017) (per curiam).

anti-tenure publications.[4] In *Wetherbe II*,[5] we reversed the district court's dismissal in part, holding that Wetherbe's anti-tenure speech was on a matter of public concern.[6] However, we affirmed in part because Wetherbe conceded that res judicata, collateral estoppel, and sovereign immunity barred some of the claims and issues in his complaint.[7] We did not address whether the law was clearly established that Wetherbe's speech was on a matter of public concern or any other qualified immunity issues.[8] The district court had not addressed whether the law was clearly established, either.[9]

On remand, the district court denied the defendants' second amended Rule 12(c) motion, holding that Wetherbe sufficiently alleged a constitutional violation and that Nail's actions were objectively unreasonable in light of clearly established law. The defendants timely appealed.

## II

"A 12(c) motion for judgment on the pleadings is [] reviewed de novo."[10] When reviewing a district court's denial of a Rule 12(c) motion, we use the same standard as in Rule 12(b)(6) motions.[11] We ask whether "in the

---

[4] *Id.*

[5] *Wetherbe v. Tex. Tech Univ. Sys.* (*Wetherbe II*), 699 F. App'x 297 (5th Cir. 2017) (per curiam).

[6] *Id.* at 298.

[7] *Id.*

[8] *See id.*

[9] *See Wetherbe*, 2016 WL 1273471, at *2 n.3.

[10] *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023).

[11] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same.").

light most favorable to the plaintiff, the complaint states a valid claim for relief."[12]  Although we "accept the factual allegations in the pleadings as true,"[13] the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[14]  "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."[15]

Here, the central issue on appeal is qualified immunity.  The Supreme Court established that "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[16]  Courts may address the two prongs in any order,[17] and defendants are entitled to qualified immunity if the plaintiff fails on either prong.[18]  For the reasons considered below, we resolve this case on the second prong.

## III

---

[12] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

[13] *Id.*

[14] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[15] *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

[16] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[17] *See id.* (noting that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first").

[18] *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) ("We can analyze the prongs in either order or resolve the case on a single prong.").

No. 19-11325

We start by addressing the required level of specificity by which Wetherbe's rights must be clearly established.

**A**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[19] "[Q]ualified immunity is inappropriate only where the officer had 'fair notice'—'in light of the specific context of the case, not as a broad general proposition'—that his *particular* conduct was unlawful."[20] "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[21]

Recitation of general legal principles is not sufficient to prove a violation of a clearly established right. We require a more specific analysis. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."[22] Instead, "the clearly established law must be 'particularized' to the facts of the case."[23] The Supreme Court has explained that "[a]lthough 'this Court's case law does not require a case directly on point for a right to be clearly established,

---

[19] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[20] *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

[21] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

[22] *Id.* at 742.

[23] *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

existing precedent must have placed the statutory or constitutional question beyond debate.'"[24] As a general proposition, "to show a violation of clearly established law, [a plaintiff] must identify a case that put [the defendant] on notice that his specific conduct was unlawful."[25]

A "general proposition," such as "that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."[26] Rather, "we must frame the constitutional question with specificity and granularity."[27] In other words, the "dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"[28] We also note our "commandment" that clearly established law comes from "holdings, not dicta," because public officials "are charged with knowing the results of our cases . . . [but] are not charged with memorizing every jot and tittle we write to explain them."[29]

Respectfully, the district court erred by defining Wetherbe's rights at too high of a level of generality. The district court's order denying Nail qualified immunity held that "it was clearly established that a state official could not impose adverse employment actions on a state employee on account of that employee's outside speech on a matter of public concern." The district court's order recited a general legal proposition, instead of

---

[24] *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (quoting *White*, 580 U.S. at 79).

[25] *Id.*

[26] *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

[27] *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019).

[28] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Ashcroft*, 563 U.S. at 742).

[29] *Morrow*, 917 F.3d at 875-76.

No. 19-11325

"fram[ing] the constitutional question with specificity and granularity."[30] The district court's failure to apply the correct level of generality resembles the Eighth Circuit's error described in *Anderson v. Creighton*.[31] In *Anderson*, the Supreme Court rejected "[t]he [Eighth Circuit's] brief discussion of qualified immunity [which] consisted of little more than an assertion that a general right Anderson was alleged to have violated—the right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances—was clearly established."[32]

Wetherbe contends that "[t]he law was clearly established that the First Amendment protects speech directed to a person outside of the workplace on a matter of public concern." Wetherbe's descriptions of clearly established law are too reliant on "broad general proposition[s]" and not sufficiently tied to "the specific context of the case."[33]

**B**

To determine the rights that must be clearly established, we briefly discuss First Amendment retaliation doctrine, as well as some law of the case considerations. Albeit circumscribed, government employees, including professors, retain First Amendment protections.[34]

---

[30] *Id.* at 874-75.

[31] 483 U.S. 635 (1987).

[32] *Id.* at 640.

[33] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

[34] *See City of San Diego v. Roe*, 543 U.S. 77, 80 (2004) ("A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment.").

No. 19-11325

The test for evaluating a First Amendment retaliation claim by government employees has five elements. At the outset, there is a "threshold layer"[35] to the inquiry: whether the employee spoke as a citizen or instead made "statements pursuant to [his] official duties."[36] If the employee's speech was made "pursuant to [his] official duties," it is unprotected by the First Amendment.[37] However, even if the employee spoke as a citizen, there are additional elements he must prove. An employee must prove that "(1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct."[38]

We consider three of the five parts of this test only briefly. Regarding the "threshold layer," Nail's briefing does not argue that Wetherbe spoke as an employee with respect to either prong of the qualified immunity test. We will therefore assume for the purposes of this appeal that Wetherbe was not speaking in that capacity.[39] With regard to element three, which balances the employee's and employer's interests, Nail's 12(c) motion did not address whether this element was met for purposes of the "constitutional violation" prong of qualified immunity, and his initial brief in our court does not raise the issue as to the "clearly established" prong. Nail's reply briefly mentions this element, but we will not consider issues raised for the first time in a reply

---

[35] *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) (per curiam).

[36] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

[37] *Id.*

[38] *Hurst v. Lee County*, 764 F.3d 480, 484 (5th Cir. 2014).

[39] *See United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) (per curiam) ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned.").

brief. Nail's briefing does address element four, which concerns causation and retaliatory animus. However, "the 'clearly established' qualified immunity standard . . . . does not require that causation be clearly established,"[40] so we need not address element four.

That leaves two remaining elements with respect to the "clearly established" prong of qualified immunity: "(1) [the plaintiff] suffered an adverse employment decision" and "(2) [the plaintiff's] speech involved a matter of public concern."[41] Therefore, applying the structure of analysis we employed in *Click v. Copeland*,[42] Nail is entitled to qualified immunity unless it was (1) clearly established that Nail's alleged retaliatory acts were adverse employment actions and (2) clearly established that Wetherbe's speech regarding tenure was on a matter of public concern. Because we conclude that it was not clearly established that Wetherbe's speech regarding tenure addressed a matter of public concern, we do not reach whether it was clearly established that Nail's alleged actions were adverse employment actions.

## C

The relevant alleged retaliatory acts occurred from August 2013 to March 2015. Prior to (and during) this timeframe, no clearly established law would have put every reasonable person on notice that Wetherbe's speech regarding tenure involved a matter of public concern.

---

[40] *Johnson v. Halstead*, 916 F.3d 410, 421 n.4 (5th Cir. 2019).

[41] *Hurst*, 764 F.3d at 484.

[42] *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992) ("We divide the analysis into two parts: whether it was clearly established (1) that transfers, as distinguished from discharges, were actionable, and (2) that political activity, as distinguished from political belief, was protected.").

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."[43] This requires a fact-specific analysis and weighing of the factors.[44] As we have explained, "[o]ne consequence of case-by-case balancing is its implication for the qualified immunity of public officials whose actions are alleged to have violated an employee's [F]irst [A]mendment rights," so "[t]here will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights."[45]

This court's opinion in *Wetherbe II* said that Wetherbe "plausibly alleged that his speech in the form of articles published on tenure constituted speech on a matter of public concern."[46] That may be law of the case, but it is not binding precedent as to whether articles by a nontenured employee of a university about problems with tenure is speech on a matter of public concern. Of course, the most salient point for purposes of resolving Wetherbe's present suit is that our 2017 decision in *Wetherbe II* cannot clearly establish the law from August 2013 to March 2015 because it postdates Nail's

---

[43] *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005) (emphasis omitted) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

[44] *See id.* at 189 ("We held in *Terrell* [*v. University of Texas System Police*, 792 F.2d 1360 (5th Cir. 1986)] that the plaintiff's speech was not protected because, although it concerned police corruption, a matter of inherent public interest, the speech was made only in a private diary which the plaintiff never intended to make public . . . . Our *Terrell* holding, however, is more accurately characterized as one in which we completely discounted the *content* of an employee's speech because the *context* element weighed so heavily against a holding of protected speech." (footnote omitted) (citing *Terrell*, 792 F.2d at 1362-63)).

[45] *Noyola v. Tex. Dep't of Hum. Res.*, 846 F.2d 1021, 1025 (5th Cir. 1988) (discussing the impact on the qualified immunity analysis of balancing an employee's First Amendment interests against government interests in efficiency and discipline).

[46] *Wetherbe II*, 699 F. App'x 297, 301 (5th Cir. 2017) (per curiam).

alleged retaliation.[47]    Moreover, *Wetherbe II* is unpublished.[48]    Nor does *Wetherbe II*'s analysis support Wetherbe's position that it was clearly established from August 2013 to March 2015 that Wetherbe's speech on tenure regarded a matter of public concern.

For purposes of brevity, we will not summarize all of our First Amendment retaliation cases.    But it suffices to say that none of our (or the Supreme Court's) precedents place the "constitutional question beyond debate."[49]    As with the cases *Wetherbe II* cites, some provide rules and analyses that one could reasonably apply to suggest that Wetherbe's speech was on a matter of public concern.    But "clearly established law comes from holdings,"[50] and none of our cases have held that speech regarding tenure is on a matter of public concern, or anything approaching that.[51]

Finally, the Supreme Court's decision in *Hope v. Pelzer*[52] does not allow Wetherbe to sidestep the general rule that law is clearly established when there is "controlling authority specifically prohibiting a defendant's

---

[47] *See Wyatt v. Fletcher*, 718 F.3d 496, 502-03 (5th Cir. 2013) ("The applicable law that binds the conduct of officeholders must be clearly established at the time the allegedly actionable conduct occurs.").

[48] *Garcia v. Blevins*, 957 F.3d 596, 601 (5th Cir. 2020) ("*Reyes* [*v. Bridgwater*, 362 F. App'x 403 (5th Cir. 2010)] is unpublished, however, and so cannot clearly establish the law.").

[49] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[50] *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019).

[51] *See, e.g.*, *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 191 n.47 (5th Cir. 2005) (collecting cases); *Kennedy v. Tangipahoa Par. Libr. Bd. of Control*, 224 F.3d 359, 373 (5th Cir. 2000) (collecting cases), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Charles v. Grief*, 522 F.3d 508, 514 n.23 (5th Cir. 2008) (collecting cases).

[52] 536 U.S. 730 (2002).

conduct."[53] In *Hope*, the Court stated that "officials can still be on notice that their conduct violates established law even in novel factual circumstances."[54] In that case, the Court denied qualified immunity at the summary judgment stage to Alabama prison guards who handcuffed a prisoner to an outdoor hitching post for hours at a time, leading to burns on at least one occasion.[55] The Court noted that "[t]he obvious cruelty inherent in this practice should have provided respondents with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment."[56] The case before us is not of this ilk.

Cases decided after *Hope* confirm this. For example, in *Brosseau v. Haugen*,[57] a case in which a law enforcement officer shot a fleeing suspect, the Supreme Court reiterated that "in an obvious case," statements of law "can 'clearly establish'" constitutional rights, "even without a body of relevant case law."[58] Nevertheless, the Supreme Court reversed the court of appeals because it had erroneously "proceeded to find fair warning in the general tests set out in *Graham* and *Garner*."[59] Both *Graham*[60] and *Garner*[61] involved excessive-force claims, but the Supreme Court held that these and

---

[53] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).

[54] *Hope*, 536 U.S. at 741.

[55] *Id.* at 733-35, 746.

[56] *Id.* at 745.

[57] 543 U.S. 194 (2004) (per curiam).

[58] *Id.* at 199 (citing *Hope*, 536 U.S. at 738).

[59] *Id.*

[60] *Graham v. Connor*, 490 U.S. 386 (1989).

[61] *Tennessee v. Garner*, 471 U.S. 1 (1985).

other excessive-force cases "by no means 'clearly establish' that [the officer's] conduct violated the Fourth Amendment."[62]

Similarly, although there was case law regarding what constitutes a matter of public concern at the time the events giving rise to this case occurred, at most, that precedent provided general principles. There was no fair warning when the conduct at issue in the present appeal occurred that Nail would be violating Wetherbe's constitutional right to free speech. Neither Wetherbe nor the dissenting opinion cites a decision that intimates that diverging views among members of the academy about tenure rose to the level of a matter of public concern. Nor was it obvious that Wetherbe's speech regarding tenure was on a matter of public concern.

In light of our (and the Supreme Court's) precedents, we cannot say that Nail had "fair notice" from August 2013 to March 2015 that Wetherbe's speech regarding tenure was on a matter of public concern. Consequently, Nail is entitled to qualified immunity.

## IV

The parties ask us to determine if Wetherbe's claims for declaratory and injunctive relief against Williams may proceed. However, nothing indicates that the district court ruled on Wetherbe's claims for declaratory and injunctive relief. The district court's order denying the Rule 12(c) motion focused entirely on Nail's qualified immunity defense. The decretal language in the order is telling: "Consequently, Nail's Motion for Judgment on the Pleadings . . . is DENIED." There was no mention of Williams or

---

[62] *Brosseau*, 543 U.S. at 201.

the claims for declaratory and injunctive relief.  Those issues are not before us.[63]

\*     \*     \*

For the foregoing reasons, we REVERSE the district court's order denying qualified immunity to defendant Nail and RENDER judgment granting him qualified immunity from plaintiff Wetherbe's First Amendment retaliation claims.

------

[63] *See Masat v. United States*, 745 F.2d 985, 988 (5th Cir. 1984) ("This court is solely a court of appeals, and its powers are limited to reviewing issues raised in, and decided by, the trial court.").

No. 19-11325

James L. Dennis, *Circuit Judge*, dissenting:

Dr. James Wetherbe is a professor at Texas Tech University's Rawls School of Business. For over twenty years, Wetherbe has distinguished himself as an outspoken critic of academic tenure, even going so far as rejecting tenure "to set an example." In this lawsuit, Wetherbe alleges that he suffered retaliation—a *de facto* demotion—in violation of the First Amendment for a series of articles he published that criticized academic tenure. Wetherbe sued the business school's former dean, Dr. Lance Nail, under 42 U.S.C. § 1983. The district court found that Wetherbe's allegations were sufficient to overcome Nail's qualified immunity defense and denied Nail's motion for judgment on the pleadings.

The majority opinion disagrees, reversing the district court's denial of qualified immunity and rendering judgment in favor of Nail. In doing so, it truncates the analysis, only addressing the clearly established prong of qualified immunity, and errantly finds that "no clearly established law would have put every reasonable person on notice that Wetherbe's speech regarding tenure involved a matter of public concern." *Ante*, at 11. Because I would find that Wetherbe sufficiently alleged a violation of his constitutional rights that was clearly established at the time of the incident, as evidenced by binding precedents cited to in a previous appeal in this same case, *Wetherbe v. Texas Tech University System*, 699 Fed. App'x 297 (5th Cir. 2017) (first citing *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 190 (5th Cir. 2005); and then citing *Moore v. Kilgore*, 877 F.2d 364, 370–72 (5th Cir. 1989)), I respectfully dissent.

*        *        *

Whether an official is entitled to qualified immunity involves two inquiries: "The first question is whether the officer violated a constitutional right. The second question is whether the 'right at issue was clearly

17

established at the time of [the] alleged misconduct.'" *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

As the majority opinion ably explains, Wetherbe alleges Nail violated his First Amendment rights by retaliating against his protected speech. To establish retaliation under the First Amendment, Wetherbe must show "(1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the government defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Hurst v. Lee Cty.*, 764 F.3d 480, 484 (5th Cir. 2014) (quoting *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011)).[1] The majority opinion finds, and I agree, that Nail waived any argument on the third element, and that the fourth need not be clearly established. *Ante*, at 10–11. Employing the framework from *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992), the majority opinion correctly explains that "Nail is entitled to qualified immunity unless it was (1) clearly established that Nail's alleged retaliatory acts were adverse employment actions and (2) clearly established that Wetherbe's speech regarding tenure was on a matter of public concern." *Ante*, at 11.

The majority opinion and I diverge on the application of *Click*'s rubric.

*First*, the majority opinion doesn't address whether Wetherbe suffered an adverse employment action—but of course he did, as Texas Tech

---

[1] There is an additional threshold inquiry to determine whether speech is protected by the First Amendment: whether the employee spoke as a citizen (protected) or instead made "statements pursuant to [his] official duties" (unprotected). *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). The majority opinion correctly notes that Nail's briefing does not argue that Wetherbe spoke as an employee and thus assumes for the purpose of this appeal that Wetherbe was speaking as a citizen. *Ante*, at 10.

effectively demoted him. *Benningfield v. City of Hous.*, 157 F.3d 369, 376 (5th Cir. 1998) ("Adverse employment actions are . . . demotions . . . ." (quoting *Pierce v. Tex. Dep't of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994))).

Wetherbe alleges he was transferred from teaching an MBA course to an introductory course, which amounts to a demotion. Specifically, he alleges that the change resulted in "a twenty percent reduction in annual compensation," and his job being "markedly less prestigious and interesting" than it was before the change. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (explaining that a transfer can constitute an adverse employment action where the new job is "markedly less prestigious and less interesting than the old one"). Beyond this, Wetherbe also alleges that his change from full professor to professor of practice caused a fifty percent increase in his workload, significantly reducing his time for research and publications. And he alleges that the ability to research and publish are the mark of prestige. Taking these allegations as true, these actions made Wetherbe's job markedly less interesting, prestigious, and substantially diminished his pay. *Sharp v. City of Hous.*, 164 F.3d 923, 933 (5th Cir. 1999) ("To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement."). This is clearly sufficient to constitute an adverse employment action under this court's precedents, and I would hold that Wetherbe successfully established that he suffered several adverse employment actions. *Id.*; *Breaux*, 205 F.3d at 157.

*Second*, on the issue that the majority opinion does reach, it concludes there was "no clearly established law [that] would have put every reasonable person on notice that Wetherbe's speech regarding tenure involved a matter of public concern." *Ante*, at 11. Not so.

Nail correctly acknowledges that we concluded in our previous appeal, *Wetherbe*, 699 F. App'x 297, that "Wetherbe's anti-tenure speech involved a matter of public concern." In that previous appeal, we held that "articles published on tenure constituted speech on a matter of public concern" because they "focus on the systemic impact of tenure, not Wetherbe's own job conditions." 699 F. App'x at 301, 300. The majority opinion skirts this conclusion by holding that *Wetherbe*, an unpublished case issued in 2017, cannot serve to clearly establish the law from August 2013 to March 2015. *Ante*, at 12–13. While the majority opinion is correct that "[t]he applicable law that binds the conduct of officeholders must be clearly established at the time the allegedly actionable conduct occurs," *Wetherbe* points to various published cases that, when taken together, clearly established the law prior to August 2013. *Wyatt v. Fletcher*, 718 F.3d 496, 502–03 (5th Cir. 2013). Specifically, *Wetherbe* explained that because the articles do not discuss Wetherbe's own job conditions and only discuss the systematic impact of tenure, they are a matter of public concern. 699 F. App'x at 300 (first citing *Salge*, 411 F.3d at 190 (finding that the content of an employee's speech weighed "in favor of holding that she spoke on a matter of public concern" when she spoke about a matter unrelated to her own employment status or job performance); and then citing *Moore*, 877 F.2d at 370–72 (firefighter's thoughts about staffing shortage constituted speech on a matter of public concern)); *see also Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008) (explaining that where the speech "was not made in the course of performing or fulfilling his job responsibilities, was not even indirectly related to his job, and was not made to higher-ups in his organization . . . but was communicated directly to elected representatives of the people," it constituted speech on a matter of public concern).

The majority opinion simply concludes that "none of our cases have held that speech regarding tenure is on a matter of public concern." *Ante*, at

13. Our analysis is not so narrow, however. *See Warnock v. Pecos Cnty., Tex.*, 116 F.3d 776, 782 (5th Cir. 1997) (holding that, though the contours of a right must be adequately defined, "'[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))). "The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013)); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462 (5th Cir. 2014) (finding that several cases, when considered together, were sufficient to provide clear warning that termination on the basis of the plaintiff's speech violated the First Amendment).

*Salge*, decided in 2005, held that a high school secretary's telephone conversation with a reporter regarding the "high-profile" resignation of the school principal constituted speech on a matter of public concern and established the rule that employee speech unrelated to the employee's own employment status or job performance weighs in favor of holding that the employee spoke on a matter of public concern. 411 F.3d at 192. In *Moore*, decided in 1989, we held that speech regarding fire department layoffs and possible staffing shortages was on a matter of public concern following the death of a firefighter and a "caldron" of media coverage that "was still simmering" regarding the layoffs, explaining that "[t]he First Amendment accords all of us, as participants in a democratic process, room to speak about public issues." 877 F.2d at 371. In another case cited by Wetherbe, we held that a library employee spoke on a matter of public concern when she wrote a letter to library management suggesting new library safety and security policies after a library employee was raped—"a violent crime that had shaken

the local community and generated significant press coverage." *Kennedy v. Tangipahoa Par. Libr. Bd. of Control*, 224 F.3d 359, 373 (5th Cir. 2000), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). *Kennedy* explained "speech made against the backdrop of ongoing commentary and debate in the press involves the public concern." *Id.* Wetherbe's publicized speech regarding tenure was unrelated to his responsibilities and on a matter the public has an interest in, as evidenced by the variety of articles and publications cited in Wetherbe's amended complaint. *Wetherbe*, 699 Fed. App'x at 301 ("the fact that various media outlets published Wetherbe's articles, shows that Wetherbe's speech was made against the backdrop of an ongoing public conversation about tenure, which indicates that the public is actually concerned about tenure.") (citing *Kennedy*, 224 F.3d at 373 ("[S]peech made against the backdrop of ongoing commentary and debate in the press involves the public concern.")).

If expressing an opinion about an elected official (*Cutler*, 767 F.3d 462), emailing elected officials about retaliation on the Texas Lottery Commission, (*Charles*, 522 F.3d 508), and discussing the resignation of a principal with a reporter (*Salge,* 411 F.3d at 192), are all speech on matters of public concern, then a reasonable official should have known that publishing articles criticizing tenure was speech on a matter of public concern too. For over forty years, "government employers have known that, unless their interest in efficiency at the office outweighs the employee's interest in speaking, they cannot fire their employees for making statements that relate to the public concern." *Kennedy*, 224 F.3d at 377. Accordingly, I would hold that based on these precedents Nail had clear warning that demoting Wetherbe on the basis of his publications about the institution of tenure in general, which were unrelated to his employment or job duties, would violate Wetherbe's First Amendment rights. *Ante*, at 10 (the majority itself assuming Wetherbe was not speaking as an employee for the purposes of this appeal);

*see also Cutler*, 767 F.3d at 473 (affirming the denial of summary judgment on qualified immunity grounds where "reasonable officials . . . should have known on the basis of *Charles* and *Davis* that [the plaintiff's] speech was protected as the speech of a citizen and that their decision to terminate [the plaintiff] on the basis of that citizen speech would violate" the First Amendment).

Because I would affirm the district court's denial of qualified immunity and remand for further proceedings, I respectfully dissent.