# United States Court of Appeals
# for the Fifth Circuit

————————

No. 25-30392

————————

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2026

Lyle W. Cayce
Clerk

Albert M. Hayes,

*Plaintiff—Appellant*,

*versus*

GStek, Incorporated,

*Defendant—Appellee*.

——————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:24-CV-1376

——————————————————————

Before Jones, Duncan, and Douglas, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Albert Hayes worked for Army contractor GStek, Inc. as an IT systems administrator at Fort Polk's Army Network Enterprise Center. After being asked to return to work in the office following the COVID pandemic, Hayes was diagnosed with Autism, Major Depressive Disorder, and Social Anxiety Disorder. He requested to be able to telework as a reasonable accommodation. GStek denied his request because Army officials determined that allowing its contractors' employees to telework was not in the Army's best interests. After Hayes had a mental breakdown and missed work, GStek terminated his employment, citing his absenteeism and other

concerns. Hayes then sued GStek, alleging claims under the Americans with Disabilities Act for failure-to-accommodate, disability discrimination, and retaliation. The district court dismissed. Because Hayes's complaint does not establish a prima facie case under any of his theories, the district court's judgment is AFFIRMED.

I.

In 2021, Hayes started working as a contract system administrator at Fort Polk through GC&E's contract with the Army. Due to the COVID pandemic, Hayes was temporarily permitted to telework. Later that same year, the Army replaced GC&E with GStek. As part of the contract transition, Hayes's employment transferred to GStek, but his job as a contract systems administrator for the Army remained the same. In February 2022, the Army and GStek transitioned away from telework and required Hayes to return to in-person work. Hayes was overstimulated by his return to the office, and in May 2022 he was diagnosed with Autism, Major Depressive Disorder, and Social Anxiety Disorder. In August 2022, Hayes was admitted to inpatient psychiatric care due to suicidal ideations.

In October 2022, Hayes filed a physician's note and a reasonable accommodation request asking GStek to allow him to telework. GStek's project manager was initially confident that Hayes could perform his work remotely, but the Army determined that it "would not be in the best interest of the organization to allow full-time teleworking." Under the terms of GStek's relationship with the Army, "Army officials overseeing the contract" in Hayes's "chain of command" had to approve the accommodation request. Furthermore, "the Army retained the express authority to control and set various terms and conditions of GStek employee[s'] employment at the Fort [Polk] . . . base, including whether or not they could telework."

After the Army determined that allowing Hayes to telework full-time would not be in its best interest, GStek tried to thread the needle by allowing Hayes to work from home two to three days per week. This accommodation was in place from December 2022 to January 2023. However, on January 16, Hayes had a "mental breakdown" and worked from home until January 19. On January 19, Hayes informed GStek that his doctor recommended that he take a medical leave of absence. On January 23, Hayes told GStek that "he needed to work from home." On January 24, Hayes asked GStek whether he needed to attend work, but he received no response. Citing concerns from both GStek and Army officials, GStek fired Hayes the next day due to his absenteeism and other concerns.

Hayes pursued administrative remedies against the Army under the Rehabilitation Act. The Army advised Hayes that, as a contractor, he was not an Army employee. Hayes brought an untimely Equal Employment Opportunity ("EEO") Office complaint against the Army. Hayes then sued the Army as an original defendant in this case on a joint-employer theory because the Army exercised control over whether he could telework. The Army moved to dismiss under Rule 12(b)(6), and the district court granted the motion because Hayes is not an Army employee, and he failed to timely contact EEO and exhaust his administrative remedies. Hayes did not appeal the dismissal of his claims against the Army.

Hayes also pursued remedies against GStek. He filed a charge of discrimination with the Equal Employment Opportunity Commission and received a notice of right to sue. Hayes then sued GStek and raised three ADA claims in district court: failure-to-accommodate, discrimination, and retaliation.

GStek filed a Rule 12(c) motion for judgment on the pleadings. The district court granted the motion and ruled that Hayes received a reasonable

accommodation when GStek provided him with the accommodation of working from home two to three days per week. Further, the district court ruled that Hayes is not a qualified individual even with a reasonable accommodation. Finally, the district court ruled that Hayes's discrimination and retaliation claims fail because they are intertwined with his unsuccessful failure-to-accommodate claim. The district court granted GStek's motion for judgment on the pleadings and dismissed Hayes's claims with prejudice.

Hayes timely appealed.

## II.

A Rule 12(c) "motion for judgment on the pleadings is [ ] reviewed de novo." *Wetherbe v. Tex. Tech Univ. Sys.*, 138 F.4th 296, 300 (5th Cir. 2025) (alteration in original) (quoting *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023)). A court will "evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). Therefore, the court asks "whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* at 544 (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The court "accept[s] the factual allegations in the pleadings as true." *Wetherbe*, 138 F.4th at 300 (quoting *MySpace*, 528 F.3d at 418). However, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

## III.

For the following reasons, Hayes's pleadings fail to establish a prima facie case for each of his claims.

### A.

To prevail in a failure-to-accommodate claim, a plaintiff must prove: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotation marks omitted). "It is the plaintiff's burden to show that he is qualified under the ADA." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017). A plaintiff can show that he is qualified if he shows "(1) he could perform the essential functions of the job in spite of his disability or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Id.* at 417 (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)) (internal brackets and quotation marks omitted).

If there is no "available reasonable accommodations that would . . . enable[]" an employee "to perform the essential functions of his job," he is not "qualified under the ADA." *Id.* at 419. In determining what constitutes "the essential functions of the job," courts are required to give "consideration . . . to the employer's judgment." 42 U.S.C. § 12111(8); *see also Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (Courts "must give greatest weight to the 'employer's judgment'"). Courts can also consider other factors such as "[t]he amount of time spent performing the function[,] . . . the work experience of past incumbents in the job or current incumbents in similar jobs[, and] . . . the consequences of not performing the function." *Credeur*, 860 F.3d at 794. Courts should not consider an "employee's personal judgment" about what constitutes the essential functions of the job. *Id.* (emphasis omitted).

These factors indicate that in-person attendance is an essential function of Hayes's job. The Army determined that allowing full-time teleworking was not in its interests, and as an Army contractor, GStek had a business interest in honoring the Army's conditions. Additionally, current incumbents working at GStek and providing contract services to the Army do not receive teleworking accommodations. Hayes's supervisor expressed concern that allowing Hayes to telework would open the floodgates of employee requests to telework and would thereby potentially damage GStek's contractual relationship with the Army.

That in-person attendance is an essential function of Hayes's job is unsurprising. "[T]here is general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs." *Credeur*, 860 F.3d at 793. When "requested by the employee, the reasonableness of telework cannot be presumed." *Ali v. Regan*, 111 F.4th 1264, 1280 (D.C. Cir. 2024). Full-time teleworking "is rarely a reasonable accommodation." *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 896 (7th Cir. 2003).

The COVID pandemic did not change the reality that in-person work is presumed to be an essential function of most jobs.

> The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship.

*Ray v. Columbia Brazoria Indep. Sch. Dist.*, No. 24-20227, 2025 WL 1219191, at *3 (5th Cir. Apr. 28, 2025) (quoting *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. EEOC, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws# (last updated May 15, 2023)). As in *Ray*, the fact that Hayes's employer permitted him to telework while temporary COVID policies were in place does not transform the essential functions of his job. Because COVID did not change the essential requirements of his job and the ADA's accommodation requirement "does not require an employer to relieve an employee of any essential functions of his or her job," GStek was not required to allow Hayes to telework. *LHC Grp., Inc.*, 773 F.3d at 698 (quoting *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)).

Moreover, an employer's ability to supervise an employee is a "factor in determining whether a work-at-home accommodation is reasonable." *Credeur*, 860 F.3d at 793. Obviously, "[d]irect employee supervision is easiest when the employee shows up regularly at work." *Id.* In contrast, supervision "is much harder to do remotely, particularly when the employee never comes to the office at all." *Id.* Hayes acknowledges several instances in which Hayes and his supervisor were unable to communicate effectively. Therefore, permitting full-time telework was not a reasonable accommodation in these circumstances.

By Hayes's own admission, he "needed to work from home" in order to perform the functions of his job. It was impossible for GStek to grant this accommodation request while also ensuring that the essential in-person functions of the job were being carried out. Therefore, Hayes was not a qualified person for the job, even with GStek's generous accommodation of allowing him to work from home two to three days per week.

In any case, GStek satisfied its statutory obligation to provide Hayes with a reasonable accommodation. GStek allowed him to work from home two to three days a week. However, that did not satisfy Hayes. That GStek did not provide Hayes with his preferred accommodation is not a violation of the ADA. *See E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009). The fact that he continually "demanded a different accommodation" does not change this calculus. *Id.* As demonstrated above, the ADA does not require GStek to grant Hayes's preferred telework accommodation because it would represent a change to the essential functions of his job.

B.

Because Hayes does not present direct evidence of disability discrimination, this court analyzes his claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). To establish a prima facie case of discrimination, Hayes "must establish: (1) he has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Caldwell*, 850 F.3d at 241. As we have explained, Hayes is not qualified for the job. He fails to establish his prima facie case of discrimination.

C.

Hayes also fails to establish a prima facie case for retaliation on the basis of his disability. A retaliation claim is analyzed under "the burden-shifting scheme established in *McDonnell Douglas*." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (citing *McDonnell Douglas*, 411 U.S. 792, 93 S. Ct. 1817). "To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff must show that: (1) [he] engaged in an activity protected by the ADA, (2) [he] suffered an adverse employment action, and

(3) there is a causal connection between the protected activity and the adverse action." *Id.* Hayes's pleadings offer no viable causal connection between his request for an accommodation and his termination.

Hayes alleges that the temporal proximity between his request for an accommodation and his termination is evidence of causation. Three months elapsed between Hayes's initial request for an accommodation and his termination. For temporal proximity to provide grounds for causation, "the temporal proximity must be 'very close.'" *Lyons*, 964 F.3d at 305 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001)). In *Breeden*, the Supreme Court approvingly cited *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), for the proposition that a three-month interval between an employee's protected activity and an employer's adverse action against that employee is not sufficient evidence of causation. *Breeden*, 532 U.S. at 273, 121 S. Ct. at 1511.

In any event, Hayes's inability to perform the essential functions of his job defeats his ability to prove causation in his prima facie case for retaliation. In *E.E.O.C. v. Ford Motor Co.*, the Sixth Circuit considered a case where an employee was unable to work in-person and fulfill an essential function of her job. 782 F.3d 753, 769-70 (6th Cir. 2015) (en banc). Because she was unable to fulfill the essential functions of her job and attend work in-person, the court ruled that no reasonable jury could find causation. *Id.* at 770. As in *Ford Motor Co.*, Hayes is unable to perform an essential function of his job—attendance. Without being a qualified individual, his request for accommodation was doomed, and that failed request cannot be the basis for a retaliation claim.

The district court's judgment is AFFIRMED.